**FILED**

**JANUARY 23, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**08 C 518**

**JUDGE HOLDERMAN**
**MAGISTRATE JUDGE BROWN**

**J. N.**

# EXHIBIT 1

IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

| | |
|---|---|
| IN RE THE MARRIAGE OF: | ) |
| | ) |
| ETHAN S. HOBERMAN, | ) |
|           Petitioner, | ) |
| | ) |
|     and | )  No. 05 D 12924 |
| | ) |
| SHARON S. HOBERMAN, | ) |
|           Respondent, | ) |
| | ) |
| GERALD LITWIN | ) |
|        Third Party Defendant. | ) |

## SCHILLER DU CANTO AND FLECK LLP'S PETITION FOR SETTING OF FINAL FEES AND COSTS

NOW COMES SCHILLER DU CANTO AND FLECK LLP and, pursuant to 750 ILCS 5/508(c) of the Illinois Marriage and Dissolution of Marriage Act, petitions this Court for the setting of final Attorney's Fees and Costs against SCHILLER DU CANTO AND FLECK LLP's former client, Respondent, SHARON S. HOBERMAN, and her Guarantor, Third Party Defendant, GERALD LITWIN, and in support thereof states as follows:

1.    On or about November 10, 2005, Respondent, SHARON S. HOBERMAN ("SHARON"), retained the services of SCHILLER, DU CANTO AND FLECK LLP for legal representation in this case. SHARON's engagement of SCHILLER DU CANTO AND FLECK LLP was pursuant to a written Engagement Agreement, a true and correct copy of which is attached hereto as **Exhibit A.**

2.    At the time of entering into the Engagement Agreement, SHARON agreed to pay those fees and costs that pursuant to such agreement were incurred on her behalf and at the hourly rates in force at that time and modified from time to time.

**Exhibit 1**

3.    At the time of entering into the Engagement Agreement, SHARON's father, GERALD LITWIN ("GERALD") guaranteed payment of the fees and costs incurred by SHARON pursuant to the terms of the Engagement Agreement. See **Exhibit A.**

4.    SCHILLER DU CANTO AND FLECK LLP represented SHARON in the above cause from November 10, 2005 to November 5, 2007, and as of the date of this Petition members of SCHILLER DU CANTO AND FLECK LLP have expended over 777.60 hours on Respondent's behalf in this matter.    Said time was spent in consultations, preparation of documents, research, conferences, letters and telephone calls, discovery and discovery analysis, preparation and in Court appearances for hearings including an evidentiary hearing on temporary custody and injunctive relief for return of the parties' minor child to the State of Illinois, and settlement negotiations of all issues.

5.    On November 5, 2007 SCHILLER DU CANTO AND FLECK LLP withdrew as counsel for SHARON and was granted 30 days to file a Petition for Setting of Final Fees and Costs. A true and correct copy of that Court Order is attached hereto as **Exhibit B.**

6.    The aggregate attorneys' fees and costs incurred by SHARON in this litigation, through November 5, 2007 is Two Hundred Twenty Thousand Six Hundred Thirty-Four Dollars and Seventy-Nine Cents ($220,634.79).  Of this amount, GERALD, as guarantor for SHARON, has paid SCHILLER DU CANTO AND FLECK LLP a total of One Hundred Twenty Nine Thousand Four Hundred and Fifty Dollars and Two Cents ($129,450.02) of the attorneys' fees and costs incurred.   GERALD, as guarantor for SHARON, paid an initial retainer of Five Thousand Dollars ($5,000.00) and additional sums of One Hundred Twenty-Four Thousand Four Hundred Fifty Dollars and Two Cents ($124,450.02) as a result of detailed monthly invoices from SCHILLER DU CANTO AND FLECK LLP.

7.    There are total unpaid attorneys' fees and costs incurred by SHARON in this litigation for which SHARON and GERALD are liable in the amount of Ninety-One Thousand One Hundred and Eighty-Four Dollars and Seventy-Seven Cents ($91,184.77).

8.    Moreover, on May 11, 2007 SHARON retained the services of CAVANAUGH AND ASSOCIATES to conduct a 604.5 Custody Evaluation in the above referenced matter. A true and correct copy of the Engagement Letter is attached hereto and incorporated herein as **Exhibit C**.

9.    On behalf of SHARON, GERALD paid an initial retainer to CAVANAUGH AND ASSOCIATES of Twenty Thousand Dollars ($20,000.00).

10.    As of the filing of this Petition, SHARON has an outstanding balance of Fourteen Thousand, Nine Hundred Forty-Five Dollars and Fifty Eight Cents ($14,945.58) due and owing to CAVANAUGH AND ASSOCIATES. A true and correct copy of the current invoice for CAVANAUGH AND ASSOCIATES is attached hereto as **Exhibit D**.

11.    Pursuant to the terms of SHARON's Engagement Agreement with SCHILLER, DU CANTO AND FLECK LLP, specifically paragraph 6(B), she, and her guarantor GERALD, are obligated to pay all costs incurred on behalf of SHARON, which specifically include all "charges for experts".

12.    Since SCHILLER, DU CANTO AND FLECK LLP filed its Appearance on SHARON's behalf, Burton S. Hochberg, Esq. was the primary attorney in this matter, being assisted by others in this firm. A major portion of the hours billed in this matter were billed by Mr. Hochberg.

13.    Attached hereto and made a part hereof as **Exhibit E** is the Affidavit of Burton S. Hochberg.

14.    Incorporated by reference into this Petition as **Group Exhibit F** are the detailed monthly statements sent to SHARON that set forth numerous details including dates of services, the person(s) providing the service, the time spent, the actual amount(s) billed, and an accounting of the various costs incurred by SHARON. Each statement also includes a summary of the services rendered, by attorney, paralegal and law clerk. This Exhibit is incorporated herein by reference but not physically attached to maintain the privilege of SHARON and are available to the Court or counsel for entry into evidence at the hearing on this Petition.

15.    This Petition for Setting Final Fees and Costs by SHARON's former attorneys against SHARON and GERALD seeks an adjudication of all unresolved claims for fees and costs between SCHILLER DU CANTO AND FLECK LLP and SHARON and GERALD, including those fees and costs due and owing to CAVANAUGH AND ASSOCIATES.

16.    The attached Engagement Agreement sets forth the hourly rates at the time of engagement for each of the lawyers, paralegals and law clerks who worked on behalf of SHARON in this litigation.

17    Of the $220,634.79 total aggregate attorneys' fees and costs billed by SCHILLER DU CANTO AND FLECK, $14,477.29 is attributable to necessary costs incurred by the firm in connection with the representation of SHARON.

18.    All work by SCHILLER DU CANTO AND FLECK LLP for SHARON was specifically authorized by her; and, during the period in question, results achieved for her were sound. Via periodic statements, SHARON was regularly and systematically apprised of all charges; and, via numerous letters, phone conferences, and face-to-face meetings, she was regularly and systematically advised as to all significant developments and issues in her case, as well as SCHILLER DU CANTO AND FLECK LLP's recommendations on numerous matters.

19.    All work services provided by SCHILLER DU CANTO AND FLECK LLP for SHARON was reasonable and necessary in the circumstances of her case.

20.    SCHILLER DU CANTO AND FLECK LLP performed all of its obligations under the Engagement Agreement between SCHILLER DU CANTO AND FLECK LLP and SHARON and GERALD, and all the fees and costs are fair compensation for the services that were rendered under the Engagement Agreement, and the Engagement Agreement should be enforced.

21.    SCHILLER DU CANTO AND FLECK LLP also should be awarded an additional reasonable sum to cover the time expended and costs incurred in connection with bringing this Petition.

22.    SHARON and GERALD have sufficient assets to make payment of SHARON's own attorneys' fees and court costs through the assets and income in their respective possession and control; and SCHILLER DU CANTO AND FLECK LLP petitions this Court for an award of attorneys' fees and court costs in the amount of $91,184.77, plus $14,945.58 for expert fees for CAVANAUGH AND ASSOCIATES, pursuant to 750 ILCS 5/508 against Respondent, SHARON HOBERMAN and her Guarantor, GERALD LITWIN, and that judgment issue upon said award.

WHEREFORE, pursuant to Section 508(c) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/508(c)), the Petitioner, SCHILLER DU CANTO AND FLECK LLP, respectfully requests:

A.    That this Court set the final fees and costs of SCHILLER DU CANTO AND FLECK LLP, including the expert costs of CAVANAUGH AND ASSOCIATES;

B.    That this Court enter a Judgment against Respondent, SHARON S. HOBERMAN, and her Guarantor, Third Party Defendant GERALD LITWIN, requiring them to

reasonable sum attributable to the filing and litigation of this Petition for Setting of Final Attorneys' Fees and Costs, plus $14,945.58 for expert fees for CAVANAUGH AND ASSOCIATES, said Judgment to incur interest at the statutory rate;

    C.    For such other and further relief as this Court deems just.


SCHILLER, DU CANTO AND FLECK

BY:  BURTON S. HOCHBERG


SCHILLER DU CANTO AND FLECK LLP
Attorney No. 26828
200 North LaSalle Street, 30th Floor
Chicago, Illinois  60601-1089
Telephone No. (312) 641-5560
Facsimile Telephone No. (312) 641-6361
Service by Facsimile Transmission Will Be Accepted

EXHIBIT
A

## ENGAGEMENT AGREEMENT

This ENGAGEMENT AGREEMENT is made and entered into as of the date set forth opposite the client's signature below, by and between SHARON HOBERMAN (hereinafter referred to as the "Client"), and SCHILLER, DU CANTO AND FLECK (hereinafter referred to as "SD&F"), pursuant to which Client agrees to retain SD&F and SD&F agrees to represent the Client in connection with the dissolution of her marriage, subject to the terms set forth below:

1.    Engagement.  Engagement of SD&F is secured by the payment of a retainer and the execution of this Engagement Agreement.  By signing below, the Client acknowledges reading this entire Engagement Agreement, executing it freely and voluntarily, and agreeing to comply with the provisions contained herein (including the provisions of Exhibits "A" and "B ," attached hereto).

2.    Term.  This Engagement Agreement shall be applicable as of the time of the Client's initial conference with SD&F and shall terminate thirty (30) days after entry of a Judgment for Dissolution of Marriage or dismissal of the case, unless extended thereafter by the parties in writing.  At all times, however, the Client shall retain the right to terminate SD&F's representation, with or without cause, upon written notice to SD&F.  In such case, SD&F shall utilize its best efforts to effect a smooth and timely transition to any successor counsel designated in writing.  In accordance with Illinois law, SD&F shall also retain the right to withdraw as the Client's counsel.  The time and costs expended by SD&F in effecting a transition to new counsel are deemed to be compensable services rendered to the client, and the costs are reimbursable costs.

3.    Decision-Making Authority.  It is expressly understood that the final authority to make the decision as to whether to proceed to trial in this case or to settle it through negotiations rests with the Client.  SD&F will advise the Client as to its professional opinion respecting settlement; but it is without authority to bind the Client to any settlement agreement without the Client's express approval.

4.    Team Approach.  It is agreed that SD&F shall utilize a team approach to handling the Client's case, which ordinarily involves the utilization of more than one attorney in the firm.  SD&F attorneys discuss issues and work together to develop strategies and litigation plans, as well as to promote the Client's best interests.  The Client understands that all attorneys' time used in this process will be chargeable to the Client.  Staffing for the Client's case shall be worked out as necessary during the Client's engagement of SD&F.

5.    General Acknowledgments and Understandings.  The parties acknowledge their understanding that the process of resolving matrimonial disputes through negotiation or litigation often involves unpredictable objective and emotional obstacles.  They further acknowledge that, at the commencement of an engagement, SD&F cannot guarantee any precise outcome or predict the amount of time required to adequately resolve the problems encountered.  It is understood that SD&F shall utilize its best efforts in seeking a favorable resolution for the Client in terms of all issues presented and shall strive to represent the Client's interests vigorously and efficiently, with due regard to the high cost of litigation and the projected maximum results achievable under the circumstances.

Due to the volume of emails including increasing amounts of "spam" that are received on a daily basis and the viruses spread between computer systems, emails are an increasingly less efficient

way to practice and communicate. Accordingly, please contact us by telephone or facsimile. Also, if you need to send documents via email my assistant's email address will be provided to you. Emails to the firm, its members and staff are not considered communications received by them.

6.    <u>Fees and Costs</u>.

A.    <u>General Parameters as to Fees</u>. SD&F agrees to represent the Client, subject to payment of a retainer in the amount of $5,000.00 and subject to the other provisions set forth herein. *The retainer will not be credited to the Client's billing until the conclusion of the case when it will be applied to the final bill.* SD&F shall bill the Client on a monthly or quarterly basis for services rendered, all interim billings to reflect hourly rates as set forth in Exhibit "B," attached hereto; and each interim bill is due and payable within thirty (30) days, or by such date as is otherwise agreed upon by the Client and SD&F in writing. The Client shall review each interim bill promptly, as well as promptly bring to SD&F's attention any question or possible error. In terms of billing, Client agrees to pay SD&F for services rendered as well as travel time with respect thereto, at no less than the indicated hourly rates. Upon final resolution of the case, SD&F shall render a final bill to the Client, such final bill taking into account various factors, in addition to the hourly rates, as delineated in the Illinois Rules of Professional Conduct (adopted by the Illinois Supreme Court) as being relevant considerations to be included in arriving at a fair and reasonable charge. Such factors include the time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the legal services properly, and whether unique expertise of any SD&F attorney was utilized; whether acceptance of the particular employment precluded other employment by the firm; the amounts involved and the results obtained; the time limitations imposed by the client or by the circumstances (including unique time demands); and the experience, reputation, and ability of the lawyer or lawyers performing the services. The final bill will be rendered prior to the entry of a final order or judgment or as soon as practicable thereafter; and payment thereon shall be due on the entry of judgment or by such date as is otherwise agreed upon by the Client and SD&F in writing. (Any payments to third parties processed subsequent to the final bill—e.g., a court reporter's charge for the final hearing—will be covered in a supplemental statement relative to final costs, or, alternatively, bill(s) relative thereto will be sent to you for payment.) *If there is a disagreement with respect to billing that remains unresolved, the issue will be submitted to binding arbitration for final resolution through a qualified arbitration program recognized by the Court for these purposes and the ruling shall be made into an enforceable order of court.*

B.    <u>Costs</u>. Costs shall include, without limitation, charges for experts, court fees, court reporters and transcript costs, computerized research charges, process server fees, photocopying, telecopying, travel time and travel costs. The Client agrees to pay directly or to pay SD&F for all such costs, which shall be set out in billing statements.

C.    <u>Changes to Hourly Rates</u>. Hourly billing rates at SD&F are reviewed annually. Changes in rates, if any, are effective as of July 1st, as to services performed after such date.

D.    <u>The Client's Primary Liability</u>. Existing law provides that a client has primary responsibility for payment of his/her own attorneys' fees and costs. In certain circumstances, a court may require a spouse with superior economic resources to contribute towards the payment of fees and costs incurred by the opposing spouse. When appropriate circumstances are present, SD&F assists its clients in seeking such a contribution either at an interim stage of a case or in

connection with or subsequent to the final judgment; but, until such a contribution is either ordered by the court or agreed upon by the opposing spouse, the Client shall be and is primarily liable for payment of fees and costs incurred pursuant to this Engagement Agreement. SD&F's services for seeking payment of fees and costs from the opposing party are also compensable services rendered to the Client.

     7.     <u>Amendment to Engagement Agreement</u>. This Engagement Agreement shall be amended only by written instrument between the parties; and no amendment may be effected unless the Client is represented by separate counsel, retained for purposes of effectuating the amendment.

     8.     <u>Severability</u>. The parties to this Engagement Agreement acknowledge and agree that, if any portion, paragraph, or provision herein is deemed unenforceable, all provisions not deemed unenforceable shall remain in full force and effect.

SCHILLER, DU CANTO AND FLECK

By: _____
    CARLTON R. MARCYAN

_____
SHARON HOBERMAN

Date _11 | 10 | 05_____

Date __Novbr 15, 2005___

<u>GUARANTY</u>

Guarantor represents and warrants to SD&F that he has read and fully understands each and every term and provision of the Engagement Agreement. Guarantor hereby guarantees payment of the fees and costs incurred by Sharon Hoberman pursuant to, and in accordance with, the terms of the Engagement Agreement.

_____
JERRY LITWIN

Date _____11/10/05_____

## EXHIBIT "A"

## STATEMENT OF CLIENT'S RIGHTS AND RESPONSIBILITIES

(1)     WRITTEN ENGAGEMENT AGREEMENT. The written engagement agreement, prepared by the counsel, shall clearly address the objectives of representation and detail the fee arrangement, including all material terms. If fees are to be based on criteria apart from, or in addition to, hourly rates, such criteria (e.g., unique time demands and/or utilization of unique expertise) shall be delineated. The client shall receive a copy of the written engagement agreement and any additional clarification requested and is advised not to sign any such agreement which the client finds to be unsatisfactory or does not understand.

(2)     REPRESENTATION. Representation will commence upon the signing of the written engagement agreement. The counsel will provide competent representation, which requires legal knowledge, skill, thoroughness and preparation to handle those matters set forth in the written engagement agreement. Once employed, the counsel will act with reasonable diligence and promptness, as well as use his best efforts on behalf of the client, but he cannot guarantee results. The counsel will abide by the client's decision concerning the objectives of representation, including whether or not to accept an offer of settlement, and will endeavor to explain any matter to the extent reasonably necessary to permit the client to make informed decisions regarding representation. During the course of representation and afterwards, the counsel may not use or reveal a client's confidence or secrets, except as required or permitted by law.

(3)     COMMUNICATION. The counsel will keep the client reasonably informed about the status of representation and will promptly respond to reasonable requests for information, including any reasonable request for an estimate respecting future costs of the representation or an appropriate portion of it. The client shall be truthful in all discussions with the counsel and provide all information or documentation required to enable the counsel to provide competent representation. During representation, the client is entitled to receive all pleadings and substantive documents prepared on behalf of the client and every document received from any other counsel of record. At the end of the representation and on written request from the client, the counsel will return to the client all original documents and exhibits. In the event that the counsel withdraws from representation, or is discharged by the client, the counsel will turn over to the substituting counsel (or, if no substitutions, to the client) all original documents and exhibits together with complete copies of all pleadings and discovery within thirty (30) days of the counsel's withdrawal or discharge.

(4)     ETHICAL CONDUCT. The counsel cannot be required to engage in conduct which is illegal, unethical, or fraudulent. In matters involving minor children, the counsel may refuse to engage in conduct which, in the counsel's professional judgment, would be contrary to the best interest of the client's minor child or children. A counsel who cannot ethically abide by his client's directions shall be allowed to withdraw from representation.

(5)     FEES. The counsel's fee for services may not be contingent upon the securing of a dissolution of marriage, upon obtaining custody, or be based upon the amount of maintenance, child support, or property settlement received, except as specifically permitted under Supreme Court rules. The counsel may not require a non-refundable retainer fee, but must remit back any overpayment at the end of the representation. The counsel may enter into a consensual security arrangement with the client whereby assets of the client are pledged to secure payment of legal fees or costs, but only if the counsel first obtains approval of the Court. The counsel will prepare and provide the client with an itemized billing statement detailing hourly rates (and/or other criteria), time spent, tasks performed, and costs incurred on a regular basis, at least quarterly. The client should review each billing statement promptly and address any objection or error in a timely manner. The client will not be billed for time spent to explain or correct a billing statement. If an appropriately detailed written estimate is submitted to a client as to future costs for a counsel's representation or a portion of the contemplated services (i.e., relative to specific steps recommended by the counsel in the estimate) and, without objection from the client, the counsel then performs the contemplated services, all such services are presumptively reasonable and necessary, as well as to be deemed pursuant to the client's direction. In an appropriate case, the client may pursue contribution to his or her fees and costs from the other party.

(6)     DISPUTES. The counsel-client relationship is regulated by the Illinois Rules of Professional Conduct (Article VIII of the Illinois Supreme Court Rules), and any dispute shall be reviewed under the terms of such Rules.

## Exhibit "B"

## Schiller, DuCanto & Fleck Hourly Rates  (7/1/2005)

| | | |
|---|---|---|
| **Partners**: | Office Rates: | Between $285 and $550 |
| | Court and Appellate Rates: | Between $310 and $600 |
| **Associates**: | Office Rates: | Between $175 and $260 |
| | Court  Rates: | Between $200 and $280 |
| **Mediation**: | Office Rate: | Between $315 and $370 |
| **Law Clerks, Legal Assistants, and Project Assistants**: | Office Rate: | $95-$155 |

**Professional Time Records are entered in tenths of an hour (*i.e.*, 6-minute increments)**

\*   \*   \*   \*   \*

Specific Rates of Primarily Responsible Attorney:

| Name: | Carlton R. Marcyan | Office: | $ 400.00 |
|---|---|---|---|
| | | Court: | $ 420.00 |
| | | Other: | $ |

| Name: | Eric L. Schulman | Office: | $ 285.00 |
|---|---|---|---|
| | | Court: | $ 310.00 |
| | | Other: | $ |

| Name: | Neal A. Simon | Office: | $ 195.00 |
|---|---|---|---|
| | | Court: | $ 200.00 |
| | | Other: | $ |

**Other personnel of the firm may be used as needed.

#99

Order                                                    CCG N002-300M-2/24/05 (                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

EXHIBIT
B

Ethan Haberman

v.                                      No. 05 D 12924

Sharon Haberman

### ORDER

This matter coming to be heard on Respondent's counsel's Motion to withdraw, due notice having been and the Court being fully advised in the Premises:

① Schiller, DuCanto + Flack, LLP is granted leave to withdraw and hereby withdraws instanter.

② SDF is granted 30 days to File the Petition for Setting of Final Fees

③ Respondent is granted 21 days to retain new counsel or file a pro se appearance

Atty. No.: 26828

Name: SDF

Atty. for: _____

Address: 200 N LaSalle #3000

City/State/Zip: Chi, IL 60601

Telephone: 312  609-5501

ENTERED:

Dated: _____

Judge

**ENTERED**
JUDGE MICHELLE LOWRANCE-1661
NOV - 5 2007
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

## SCHILLER DuCANTO AND FLECK LLP
### ATTORNEYS AT LAW

JOSEPH N. DU CANTO
DONALD C. SCHILLER
CHARLES J. FLECK
DAVID H. HOPKINS
ARNOLD B. STEIN
BURTON S. HOCHBERG
CARLTON R. MARCYAN
TIMOTHY M. DAW
BENJAMIN S. MACKOFF
JAMES B. O'BRIEN
SARANE C. SIEWERTH
ANITA M. VENTRELLI
ANDREA MUCHIN
STEPHEN M. DEITSCH
KAREN PINKERT-LIEB
CELIA G. GAMRATH
ERIC L. SCHULMAN
MARIO R. VENTRELLI

MEIGHAN A. HARMON
JENNIFER DILLON KOTZ
DEBORAH A. CARDER
CLAIRE R. McKENZIE
JESSICA SANK INTERLANDI
MICHELLE A. LAWLESS
JAY P. DAHLIN
NEAL A. SIMON
JASON N. SPOSEEP
STEWART J. AUSLANDER
JOSHUA M. JACKSON
PATRICK T. RYAN
ERIKA N. WALSH
MARK A. WIRTZ
KRISTEN A. JACOBSEN
ANDREW G. VAUGHN
MAUREEN A. GOTTLIEB
KAREN M. SCHETZ

200 NORTH LASALLE STREET
30TH FLOOR
CHICAGO, ILLINOIS 60601-1089

WWW.SDFLAW.COM
FAX (312) 641-6361
(312) 641-5560

LAKE FOREST OFFICE
225 EAST DEERPATH ROAD
SUITE 270
LAKE FOREST, IL 60045-1973
FAX (847) 615-8284
(847) 615-8300

WHEATON OFFICE
311 SOUTH COUNTY FARM ROAD
SUITE G
WHEATON, IL 60187-2477
FAX (630) 665-6082
(630) 665-5800

OF COUNSEL
HAROLD G. FIELD
MICHAEL R. GALASSO

DIRECT DIAL NUMBER

May 11, 2007

(312) 609-5501

*Via Hand Delivery*
Dr. Peter Fink, M.D.
Cavanaugh and Associates
1725 West Harrison Street
Suite 110
Chicago, IL 60612

### In Re the Marriage Of:  Hoberman

Dear Dr. Fink:

Pursuant to your request, enclosed is Sharon Hoberman's retainer check for $20,000 payable to Cavanaugh and Associates to procure your services, and the services of your firm Cavanaugh and Associates, as a Sec. 604.5 Custody, Visitation and Removal Evaluator in the above referenced matter.

We understand your hourly rate is $410 per hour with any testimony billed at a rate of $800 per hour. If anyone else from your firm is going to be working on the file, please provide us their name and hourly rates by letter identifying same.

As a 604.5 Custody, Visitation and Removal Evaluator in this matter, you have agreed to conduct the necessary investigation and prepare a report addressing the issues of custody, visitation and removal as it applies to Sharon, Ethan and Abby Hoberman. It is our understanding that your evaluation shall include a personal visit to New Jersey and review Mrs. Hoberman and Abby at their residence which out of pocket travel expenses will be charged against the retainer.


EXHIBIT
C

SCHILLER DuCANTO AND FLECK LLP

PAGE 2
May 11, 2007

We request that at the completion of their matter, any unused portion of the retainer shall be refunded. We understand that if the retainer is exhausted, payment will be made of any additional balance due prior to the release of any report produced in this matter. We further request that your office provide written notice, with description of charges, after the exhaustion of each $5,000 increment of the retainer.

Pursuant my signature below we hereby agree to the terms of this Engagement. If this letter accurately reflects your understanding, please sign on the signature line and return a copy of this letter to our offices.

_____
Cavanaugh and Associates

Very truly yours,

SCHILLER, DUCANTO AND FLECK

BURTON S. HOCHBERG

JPD/KH
Enclosure
cc:    Sharon Hoberman
       Jay P. Dahlin

272284_1.DOC

6848

**LITWIN & TIERMAN, P.A.**
ATTORNEY BUSINESS ACCOUNT
TWO UNIVERSITY PLAZA
HACKENSACK, NJ 07601

COMMERCE BANK
AMERICA'S MOST CONVENIENT BANK
1-800-YES-2000

55-95-212

5/2/2007

PAY TO THE
ORDER OF     Cavanaugh Associates

$  **20,000.00

Twenty Thousand and 00/100********************************************************************     DOLLARS

Cavanaugh Associates

MEMO     *Sharon Litwin - petiol*
         Gerald H. Litwin                                      *Gerald H. Litwin*

⑈006848⑈ ⑆021200957⑆ ⑈881⑈00926 5⑈

# Business Associates Contract

THIS CONTRACT is entered into on this fifteenth day of March, 2003, between Cavanaugh & Cavanaugh MDSC ("COVERED ENTITY") and *Schiller DuCanto & Fleck* ("BUSINESS ASSOCIATE").

•••••••••••••••••••••••••••••••••••••••••••••••

WHEREAS, COVERED ENTITY will make available and/or transfer to BUSINESS ASSOCIATE Protected Health Information, in conjunction with goods or services that are being provided by BUSINESS ASSOCIATE to COVERED ENTITY, that is confidential and must be afforded special treatment and protection.

WHEREAS, BUSINESS ASSOCIATE will have access to and/or receive from COVERED ENTITY Protected Health Information that can be used or disclosed only in accordance with this Contract and the HHS Privacy Rule.

NOW, THEREFORE, COVERED ENTITY and BUSINESS ASSOCIATE agree as follows

1. **Definitions.** The following terms shall have the meaning ascribed to them in this Section. Other capitalized terms shall have the meaning ascribed to them in the context in which they first appear.

a. Contract shall refer to this document.
b. **BUSINESS ASSOCIATE** shall mean *Schiller DuCanto & Fleck*
c. **COVERED ENTITY** shall mean Cavanaugh & Cavanaugh MDSC.
d. **HHS Privacy Rule** shall mean the Code of Federal Regulations ("C.F.R.") at Title 45, Sections 160 and 164.
e. **Individual** shall mean the person who is the subject of the Protected Health Information, as defined by 45 C.F.R. 164.501.
f. **Protected Health Information** shall mean any individually identifiable health information provided and/or made available by COVERED ENTITY to BUSINESS ASSOCIATE, and has the same meaning as the term "protected health information" as defined by 45 C.F.R. 164.501.
g. **Parties** shall mean BUSINESS ASSOCIATE and COVERED ENTITY
h. **Secretary** shall mean the Secretary of the Department of Health and Human Services ("HHS&") and any other officer or employee of HHS to whom the authority involved has been delegated.

2. **Term.** The term of this Contract shall commence as of April 13, 2003 (the "Effective Date" of the HHS Privacy Rule), and shall expire when all of the Protected Health Information provided by COVERED ENTITY to BUSINESS ASSOCIATE is destroyed or returned to COVERED ENTITY pursuant to Clause 16 of this contract.

3. **Limits On Use And Disclosure Established By Terms Of Contract.** BUSINESS ASSOCIATE hereby agrees that it shall be prohibited from using or disclosing the Protected Health Information provided or made available by COVERED ENTITY for any purpose other than as expressly permitted or required by this Contract. (ref. 164.504(e)(2)(i))

4. **Stated Purposes For Which BUSINESS ASSOCIATE May Use Or Disclose Protected Health Information.** The Parties hereby agree that BUSINESS ASSOCIATE shall be permitted to use and/or disclose Protected Health Information provided or made available from COVERED ENTITY for the following stated purposes:

    (1) Authorized Disclosure by Individual
    (2) As required by law

**5. Use Of Protected Health Information For Management, Administration And Legal Responsibilities.** BUSINESS ASSOCIATE is permitted to use Protected Health Information if necessary for the proper management and administration of BUSINESS ASSOCIATE or to carry out legal responsibilities of BUSINESS ASSOCIATE. (ref. 164.504(e)(4)(i)(A-B))

**6. Disclosure Of Protected Health Information For Management, Administration and Legal Responsibilities.** BUSINESS ASSOCIATE is permitted to disclose Protected Health Information received from COVERED ENTITY for the proper management and administration of BUSINESS ASSOCIATE or to carry out legal responsibilities of BUSINESS ASSOCIATE, provided:

a. The disclosure is required by law; or

b. The BUSINESS ASSOCIATE obtains reasonable assurances from the person to whom the Protected Health Information is disclosed that it will be held confidentially and used or further disclosed only as required by law or for the purposes for which it was disclosed to the person, the person will use appropriate safeguards to prevent use or disclosure of the Protected Health Information, and the person immediately notifies the BUSINESS ASSOCIATE of any instance of which it is aware in which the confidentiality of the Protected Health Information has been breached. (ref.164.504(e)(4)(ii).

**7. Data Aggregation Services.** BUSINESS ASSOCIATE is also permitted to use or disclose Protected Health Information to provide data aggregation services, as that term is defined by 45 C.F.R. 164.501, relating to the health care operations of COVERED ENTITY. (ref. 164.504(e)(2)(i)(B)).

**8. Limits On Use And Further Disclosure Established By Contract And Law.** BUSINESS ASSOCIATE hereby agrees that the Protected Health Information provided or made available by COVERED ENTITY shall not be further used or disclosed other than as permitted or required by the Contract or as required by law. (ref. 45 C.F.R. 164.504(e)(2)(ii)(A))

**9. Appropriate Safeguards.** BUSINESS ASSOCIATE will establish and maintain appropriate safeguards to prevent any use or disclosure of the Protected Health Information. (ref. 164.504(e)(2)(ii)(B))

**10. Reports Of Improper Use Or Disclosure.** BUSINESS ASSOCIATE hereby agrees that it shall report to COVERED ENTITY **within two (2) days of discovery** any use or disclosure of Protected Health Information not provided for or allowed by this Contract. (ref. 164.504(e)(2)(ii)(C))

**11. Subcontractors And Agents.** BUSINESS ASSOCIATE hereby agrees that anytime Protected Health Information is provided or made available to any subcontractors or agents, BUSINESS ASSOCIATE must enter into a subcontract with the subcontractor or agent that contains the same terms, conditions and restrictions on the use and disclosure of Protected Health Information as contained in this Contract. (ref. 164.504(e)(2)(ii)(D))

**12. Right Of Access To Protected Health Information.** BUSINESS ASSOCIATE hereby agrees to make available and provide a right of access to Protected Health Information by an Individual. This right of access shall conform with and meet all of the requirements of 45 C.F.R. 164.524, including substitution of the words "Covered Entity" with BUSINESS ASSOCIATE where appropriate. (ref. 164.504(e)(2)(ii)(E))

13. **Amendment And Incorporation Of Amendments.** BUSINESS ASSOCIATE agrees to make Protected Health Information available for amendment and to incorporate any amendments to Protected Health Information in accordance with 45 C.F.R. 164.526, including substitution of the words "Covered Entity" with BUSINESS ASSOCIATE where appropriate. (ref. 164.504(e)(2)(ii)(F))

14. **Provide Accounting.** BUSINESS ASSOCIATE agrees to make Protected Health Information available as required to provide an accounting of disclosures in accordance with 45 C.F.R. 164.528, including substitution of the words "Covered Entity" with BUSINESS ASSOCIATE where appropriate. (ref. 164.504(e)(2)(ii)(G))

15. **Access To Books And Records.** BUSINESS ASSOCIATE hereby agrees to make its internal practices, books, and records relating to the use or disclosure of Protected Health Information received from, or created or received by BUSINESS ASSOCIATE on behalf of the COVERED ENTITY, available to the Secretary or the Secretary's designee for purposes of determining compliance with the HHS Privacy Rule. (ref. 164.504(e)(2)(ii)(H))

16. **Return Or Destruction Of Protected Health Information.** At termination of this Contract, BUSINESS ASSOCIATE hereby agrees to return or destroy all Protected Health Information received from, or created or received by BUSINESS ASSOCIATE on behalf of COVERED ENTITY. BUSINESS ASSOCIATE agrees not to retain any copies of the Protected Health Information after termination of this Contract. If return or destruction of the Protected Health Information is not feasible, BUSINESS ASSOCIATE agrees to extend the protections of this Contract for as long as necessary to protect the Protected Health Information and to limit any further use or disclosure. If BUSINESS ASSOCIATE elects to destroy the Protected Health Information, it shall certify to COVERED ENTITY that the Protected Health Information has been destroyed. (ref. 164.504(e)(2)(ii)(I))

17. **Mitigation Procedures.** BUSINESS ASSOCIATE agrees to have procedures in place for mitigating, to the maximum extent practicable, any deleterious effect from the use or disclosure of Protected Health Information in a manner contrary to this Contract or the HHS Privacy Rule. (ref. 164.530(f))

18. **Sanction Procedures.** BUSINESS ASSOCIATE agrees and understands that it must develop and implement a system of sanctions for any employee, subcontractor or agent who violates this Agreement or the HHS Privacy Rule. (ref. 164.530(e)(1))

19. **Property Rights.** The Protected Health Information shall be and remain the property of COVERED ENTITY. BUSINESS ASSOCIATE agrees that it acquires no title or rights to the Protected Health Information, including any de-identified Protected Health Information, as a result of this Contract.

20. **Termination of Contract.** BUSINESS ASSOCIATE agrees that COVERED ENTITY has the right to immediately terminate this Contract and seek relief if COVERED ENTITY determines that BUSINESS ASSOCIATE has violated a material term of this Contract. (ref. 164.504(e)(2)(iii))

21. **Grounds For Breach.** Any non-compliance by BUSINESS ASSOCIATE of this Contract or the HHS Privacy Rule will automatically be considered to be a Grounds For Breach, if BUSINESS ASSOCIATE knew or reasonably should have known of such non-compliance and failed to immediately take reasonable steps to notify COVERED ENTITY and cure the

non-compliance.

**22. Governing Law.** This Contract shall be governed by the laws of IL.

**23. Injunctive Relief.** Notwithstanding any rights or remedies provided for in this Contract, COVERED ENTITY retains all rights to seek injunctive relief to prevent or stop the unauthorized use or disclosure of Protected Health Information by BUSINESS ASSOCIATE or any agent, contractor or third party that received Protected Health Information from BUSINESS ASSOCIATE.

**24. Binding Nature and Assignment.** This Contract shall be binding on the Parties hereto and their successors and assigns, but neither Party may assign this Agreement without the prior written consent of the other, which consent shall not be unreasonably withheld.

**25. Notices.** Whenever under this Contract one party is required to give notice to the other, such notice shall be deemed given if mailed by First Class United States mail, postage prepaid, and addressed as follows:

**COVERED ENTITY:**
Cavanaugh & Cavanaugh MDSC.
1725 West Harrison Street
Suite 110
Chicago, IL 60612

**BUSINESS ASSOCIATE:** *Schiller, DuCanto & Fleck*
*200 N. LaSalle - 30th Flr*
*Chicago, IL 60601-1089*

Either Party may at any time change its address for notification purposes by mailing a notice stating the change and setting forth the new address.

**26. Article Headings.** The article headings used are for reference and convenience only, and shall not enter into the interpretation of this Contract.

**27. Force Majeure.** BUSINESS ASSOCIATE shall be excused from performance under this Contract for any period BUSINESS ASSOCIATE is prevented from performing any services pursuant hereto, in whole or in part, as a result of an Act of God, war, civil disturbance, court order, labor dispute or other cause beyond its reasonable control, and such nonperformance shall not be grounds for termination.

**28. Entire Agreement.** This Contract consists of this document, and constitutes the entire agreement between the Parties. There are no understandings or agreements relating to this Agreement which are not fully expressed in this Contract and no change, waiver or discharge of obligations arising under this Contract shall be valid unless in writing and executed by the Party against whom such change, waiver or discharge is sought to be enforced.

IN WITNESS WHEREOF, BUSINESS ASSOCIATE and COVERED ENTITY have caused this Contract to be signed and delivered by their duly authorized representatives, as of the date set forth above.

**BUSINESS ASSOCIATE:**

X _____

Print Name: Jay Dahlin

Title: Associate

Co: Schiller, Duland + Fleck

**COVERED ENTITY**

X _____

Print Name: Dr. James Cavanaugh Jr., M.D.

Title: Vice President

Cavanaugh & Cavanaugh MDSC

# CAVANAUGH & ASSOCIATES
### 1725 West Harrison Street  Suite 110  Chicago, Illinois  60612  (312) 829-1463



EXHIBIT
D

**STATEMENT TO:**

Jay Dahlin
Schiller, DuCanto & Fleck
200 N. LaSalle
Suite 2700
Chicago, IL  60601-1089

| STATEMENT DATE: | CASE NUMBER: | PAGE: |
|---|---|---|
| 11/19/2007 | 2762 | 1 |

**CASE:** Ethan Hoberman v. Sharon Hoberman

A7685 F4494

| SERVICE | POSTED | DESCRIPTION OF SERVICE | | | AMOUNT | BALANCE |
|---|---|---|---|---|---|---|
| | | Balance Forward | | | | 0.00 |
| | | | | | 410.00 | 410.00 |
| 03/14/2007 | 2007/03 | Payment on Account-6749 Litman-Tierney | | | 410.00 | 0.00 |
| | | Meeting with Attorney | 1.00 | Hours @  410.00 | 410.00 | 410.00 |
| 03/28/2007 | 2007/03 | Interview Sharon Hoberman | 4.00 | Hours @  410.00 | 1,640.00 | 1,640.00 |
| | | | | | 1,640.00 | 0.00 |
| 03/29/2007 | 2007/03 | Payment on Account-6787-Litman | | | 20,000.00 | 20,000.00 |
| 06/15/2007 | 2007/06 | Payment on Account-6846-Attorney | | | | 20,000.00 |
| 06/08/2007 | 2007/06 | Record Review | 1.00 | Hours @  350.00 | 350.00 | 19,650.00 |
| 06/08/2007 | 2007/06 | Scheduling/Letter | 0.75 | Hours @  350.00 | 262.50 | 19,387.50 |
| 06/08/2007 | 2007/06 | Record Review | 2.00 | Hours @  350.00 | 700.00 | 18,687.50 |
| 07/05/2007 | 2007/07 | Psychological Testing | 3.25 | Hours @  350.00 | 1,137.50 | 17,550.00 |
| 07/05/2007 | 2007/07 | Psychological Test Scoring/Interpretation | 0.75 | Hours @  350.00 | 262.50 | 17,287.50 |
| 07/09/2007 | 2007/07 | Psychological Test Scoring/Interpretation | 3.00 | Hours @  350.00 | 1,050.00 | 16,237.50 |
| 07/10/2007 | 2007/07 | Psychological Testing | 3.50 | Hours @  350.00 | 1,225.00 | 15,012.50 |
| 07/11/2007 | 2007/07 | Psychological Test Scoring/Interpretation | 1.50 | Hours @  350.00 | 525.00 | 14,487.50 |
| 07/11/2007 | 2007/07 | Psychological Test Scoring/Interpretation | 3.50 | Hours @  350.00 | 1,225.00 | 13,262.50 |
| 07/12/2007 | 2007/07 | Report/Letter Preparation | 1.00 | Hours @  350.00 | 350.00 | 12,912.50 |
| 07/14/2007 | 2007/07 | Report/Letter Preparation | 3.00 | Hours @  350.00 | 1,050.00 | 11,862.50 |
| 07/14/2007 | 2007/07 | Psychological Interview | 3.00 | Hours @  410.00 | 1,230.00 | 10,632.50 |
| 07/14/2007 | 2007/07 | Interview of Ethan Hoberman | 1.00 | Hours @  350.00 | 350.00 | 10,282.50 |
| 07/15/2007 | 2007/07 | Report/Letter Preparation | 1.25 | Hours @  350.00 | 437.50 | 9,845.00 |
| 07/15/2007 | 2007/07 | Record Review | 1.50 | Hours @  350.00 | 525.00 | 9,320.00 |
| 07/16/2007 | 2007/07 | Record Review | 3.00 | Hours @  350.00 | 1,050.00 | 8,270.00 |
| 07/16/2007 | 2007/07 | Psychological Testing | 3.50 | Hours @  350.00 | 1,225.00 | 7,045.00 |
| 07/17/2007 | 2007/07 | Psychological Test Scoring/Interpretation | | | 495.58 | 6,549.42 |
| 07/18/2007 | 2007/07 | Debit to Account/Airline Tickets (see attache | | | | 5,411.92 |
| 07/18/2007 | 2007/07 | Psychological Testing | 3.25 | Hours @  350.00 | 1,137.50 | 5,411.92 |

Continued on Next Page...

# CAVANAUGH & ASSOCIATES
### 1725 West Harrison Street   Suite 110   Chicago, Illinois   60612   (312) 829-1463

**STATEMENT TO:**

Jay Dahlin
Schiller, DuCanto & Fleck
200 N. LaSalle
Suite 2700
Chicago, IL 60601-1089

| STATEMENT DATE: | CASE NUMBER: | PAGE: |
|---|---|---|
| 11/19/2007 | 2762 | 2 |

**CASE:** Ethan Hoberman v. Sharon Hoberman

A7885 F4494

| SERVICE | POSTED | DESCRIPTION OF SERVICE | | | | AMOUNT | BALANCE |
|---|---|---|---|---|---|---|---|
| | | Continued From Previous Page. | | | | | |
| 07/19/2007 | 2007-07 | Psychological Test Scoring/Interpretation | 1.75 | Hours @ | 350.00 | 612.50 | 4,799.92 |
| 07/19/2007 | 2007-07 | Report/Letter Preparation | 0.75 | Hours @ | 350.00 | 262.50 | 4,536.92 |
| 07/20/2007 | 2007-07 | Report/Letter Preparation | 3.00 | Hours @ | 350.00 | 1,050.00 | 3,486.92 |
| 07/21/2007 | 2007-07 | Home Visit | 2.00 | Hours @ | 350.00 | 700.00 | 2,786.92 |
| 07/21/2007 | 2007-07 | Home Visit-Ethan Hoberman | 3.00 | Hours @ | 410.00 | 1,230.00 | 1,556.92 |
| 07/21/2007 | 2007-07 | Summary of Home Visit Ethan Hoberman | 1.00 | Hours @ | 410.00 | 410.00 | 1,146.92 |
| 07/22/2007 | 2007-07 | Report/Letter Preparation | 2.75 | Hours @ | 350.00 | 962.50 | 184.42 |
| 07/29/2007 | 2007-07 | Record Review | 1.00 | Hours @ | 410.00 | 410.00 | 225.58 |
| 07/30/2007 | 2007-07 | Record Review | 2.00 | Hours @ | 410.00 | 820.00 | 1,045.58 |
| 08/01/2007 | 2007-08 | Record Review | 1.00 | Hours @ | 410.00 | 410.00 | 1,455.58 |
| 08/02/2007 | 2007-08 | Telephone Conference with Attorney | 0.75 | Hours @ | 350.00 | 262.50 | 1,718.08 |
| 08/02/2007 | 2007-08 | Telephone Conference with Attorney | 0.75 | Hours @ | 410.00 | 307.50 | 2,025.58 |
| 08/07/2007 | 2007-08 | Record Review/Case Review | 10.00 | Hours @ | 350.00 | 3,500.00 | 5,525.58 |
| 08/07/2007 | 2007-08 | Interviews/Observation Home Visit | 7.00 | Hours @ | 350.00 | 2,450.00 | 7,975.58 |
| 08/07/2007 | 2007-08 | Record Review/Case Review | 10.00 | Hours @ | 410.00 | 4,100.00 | 12,075.58 |
| 08/07/2007 | 2007-08 | Interviews/Observation Home Visit | 7.00 | Hours @ | 410.00 | 2,870.00 | 14,945.58 |

Please call Janice Blaney at (312) 829-1463 regarding billing information.

| BALANCE DUE | $ | 14,945.58 |
|---|---|---|

Atty No. 26828

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE: THE MARRIAGE OF

ETHAN A. HOBERMAN, _____
Petitioner,

        and

                                     NO. 05 D 12924

SHARON S. HOBERMAN, _____
Respondent.

        and

GERALD LITWIN, _____
Third Party Defendant.

## AFFIDAVIT OF BURTON S. HOCHBERG IN SUPPORT OF SCHILLER DU CANTO AND FLECK LLP'S PETITION FOR SETTING OF FINAL FEES AND COSTS

I, BURTON S. HOCHBERG herein certifies under penalty of perjury pursuant to 735 ILCS 5/1-109 of the Code of Civil Procedure as follows:

1.     I am an attorney at law duly licensed to practice in the State of Illinois. Each of the statements contained herein is true and correct and known to me of my own personal knowledge. If called as a witness, I could and would competently testify thereto.

2.     I was one of the attorneys of record for SHARON HOBERMAN, who is the Respondent in this case, having been engaged to represent her on November 5, 2005.

3.     Pursuant to the terms of the Engagement Agreement, SHARON S. HOBHERMAN, agreed to pay the legal fees billed by partners, associate, paralegals, clerks and experts fees as detailed in the Engagement Agreement and modified from time to time as well as costs incurred incident to this matter.

4.     At the time of entering into the Engagement Agreement, SHARON's father, GERALD LITWIN ("GERALD") guaranteed payment of the fees and costs incurred by SHARON pursuant to the terms of the Engagement Agreement. See **Exhibit A**.

EXHIBIT
E

5.    SCHILLER DU CANTO AND FLECK LLP represented SHARON in the above cause from November 10, 2005 to November 5, 2007, and as of the date of this Petition members of SCHILLER DU CANTO AND FLECK LLP have expended over 777.60 hours on Respondent's behalf in this matter.    Said time was spent in consultations, preparation of documents, conferences, letters and telephone calls, discovery and discovery analysis, preparation and in Court appearances for hearings including an extended trial on temporary custody and injunctive relief for return of the parties' minor child to the State of Illinois, and settlement negotiations of all issues.

6.    On November 5, 2007 SCHILLER DU CANTO AND FLECK LLP withdrew as counsel for SHARON and was granted 30 days to file a Petition for Setting of Final Fees and Costs. A true and correct copy of that Court Order is attached hereto as **Exhibit B.**

7.    The aggregate attorneys' fees and costs incurred by SHARON in this litigation, through November 5, 2007 is Two Hundred Twenty Thousand Six Hundred Thirty-Four Dollars and Seventy-Nine Cents ($220,634.79).  Of this amount, GERALD, as guarantor for SHARON, has paid SCHILLER DU CANTO AND FLECK LLP a total of One Hundred Twenty Nine Thousand Four Hundred and Fifty Dollars and Two Cents ($129,450.02) of the attorneys' fees and costs incurred.  GERALD, as guarantor for SHARON, paid an initial retainer of Five Thousand Dollars ($5,000.00) and additional sums of One Hundred Twenty-Four Thousand Four Hundred Fifty Dollars and Two Cents ($124,450.02) as a result of detailed monthly invoices from SCHILLER DU CANTO AND FLECK LLP.

8.    There are total unpaid attorneys' fees and costs incurred by SHARON in this litigation for which SHARON and GERALD are liable in the amount of Ninety-One Thousand One Hundred and Eighty-Four Dollars and Seventy-Seven Cents ($91,184.77).

15.    All of the allegations contained in SCHILLER DU CANTO AND FLECK LLP's

Petition for Setting Final Fees and Costs are true and correct.

Further Affiant Sayeth Not.

Under penalties as provided by law to 735 ILCS 5/1-109, I certify that the statements set forth in this instrument are true and correct except as to matters therein stated to be on information and belief and, as to such matters, I certify that I verify believe same to be true.

DATED: _____

_____
BURTON S. HOCHBERG

SCHILLER, DU CANTO AND FLECK
Attorney No. 26828
200 North LaSalle Street, 30th Floor
Chicago, Illinois  60601-1089
Telephone No. (312) 641-5560
Facsimile Telephone No. (312) 641-6361
Service by Facsimile Transmission Will Be Accepted

# EXHIBIT 2

DRAFT ORDER

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

Ethan Hoberman

v.

Sharon Hoberman

NO. 05 D 12924

ORDER

This cause coming to be heard on ☐ Petitioner's ☐ Respondent's ☐ Joint Motion for SDF's Fees to Join 3rd Party
all parties being advised of the premises, ☐ Petitioner ☐ with counsel ☐ pro se ☐Respondent ☐ with
counsel ☐ pro se appearing, and this court having jurisdiction over the subject matter, ☐ by agreement
☐ after hearing,

THE COURT FINDS:

① Sharon Litwin (Hoberman) and Gerald Litwin having been provided notice and not appearing,

IT IS HEREBY ORDERED:

① Gerald Litwin is hereby joined as a necessary third party to this Fee Matter.

② Sharon Litwin & Gerald Litwin are hereby granted 14 days to invoke ADR, should they not provide written notice to Jay Dahlin of Schiller, DuCanto & Fleck within 14 days of intent to invoke ADR, said is waived.

③ SDF's Petition for Setting of Final Fees is set for status to set hearing on January 29, 2008 at 9:30 am

④ Sharon & Gerald Litwin are granted 28 days to respond to the Petition for Setting of Final Fees.

NAME Schiller DuCanto & Fleck
ATTY FOR —
PHONE 312-609-5501

ENTERED
JUDGE MICHELLE LOWRANCE-1661
DEC 19 2007
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
Judge's No.

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Exhibit 2

# EXHIBIT 3

CCDR N001-10M-9/21/05 ( )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS

IN RE THE MARRIAGE OF:

ETHAN HOBERMAN

Petitioner,

AND

SHARON HOBERMAN

Respondent.

GERALD LITWIN

Third Party Respondent

No: 05 D 12924

Calendar:42

Please serve the Respondent at:

843 Columbus Drive

Teaneck, NJ 07666

2120 - Summons - Retd. P.S.
2121 - Alias Summons - Retd. P.S.
2700 - Return of Service P.S. - Ord. of Protect.

2220 - Summons - Retd. N.S.
2221 - Alias Summons - Retd. N.S.
2702 - Return of Service N.S. - Ord. of Protect.

## SUMMONS

**TO THE RESPONDENT:**

The Petitioner has filed a legal proceeding against you for one or more of the following:

☐Dissolution of Marriage; ☐Legal Separation; ☐Declaration of Invalidity; ☐Custody; ☐Child Support; ☐Order of Protection under the Illinois Domestic Violence Act; ☐Praecipe for Summons *☒Other: Attorney's Fees.

YOU ARE SUMMONED and required to file your WRITTEN APPEARANCE AND RESPONSE in the Office of the Clerk of the Circuit Court located at:

☒ Richard J. Daley Center
50 W. Washington, Room 802
Chicago, IL 60602

☐ Domestic Violence Court
555 W. Harrison Street
Chicago, IL 60607

☐ Child Support
28 North Clark, Room 200
Chicago, IL 60602

☐ District 2 - Skokie
5600 Old Orchard Road
Skokie, IL 60077

☐ District 3 – Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 - Maywood
1500 Maybrook Drive
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Avenue
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

not later than ☒30 days, ☐7 days after service of this summons, not counting the day of service.

**IF YOU FAIL TO FILE YOUR WRITTEN APPEARANCE WITHIN THE TIME STATED ABOVE, A DEFAULT JUDGMENT MAY BE ENTERED AGAINST YOU AND THE COURT MAY GRANT THE PETITIONER ALL OR PART OF THE RELIEF THAT SHE OR HE IS REQUESTING IN HER OR HIS PETITION.**

TO THE OFFICER: This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed.

WITNESS _____ DEC 27 2007 _____ , _____

DOROTHY BROWN
CLERK OF CIRCUIT COURT
Circuit Court Clerk

Atty Co. No. 26828
Name: Schiller DuCanto and Fleck LLP
Atty. for Schiller DuCanto and Fleck
Address: 200 N. LaSalle St., 30th Floor
City/State/Zip: Chicago, IL 60601
Telephone: 312-641-5560
Facsimile Telephone No. (312) 641-6361
Service by Facsimile Transmission Will Be Accepted

Date of Service: _____
[To be inserted by officer on copy left with respondent or other person]

**SEE REVERSE SIDE**

304920_1.DOC

**Exhibit 3**

(Rev. 9/21/05) CCDR 0001B

## NOTICE PURSUANT TO ILLINOIS SUPREME COURT RULE SCR 101(e)

### ON SERVICE OF THIS SUMMONS, A DISSOLUTION ACTION STAY SHALL BE IN EFFECT, RESTRAINING BOTH PARTIES, AS PROVIDED BY STATUTE

750 ILCS 5/501.1(a) of the Illinois Marriage and Dissolution of Marriage Act includes the following:

Dissolution action stay:

(a)     Upon service of a summons and petition or praecipe filed under the Illinois Marriage and Dissolution of Marriage Act or upon the filing of the respondent's appearance in the proceeding, whichever first occurs, a dissolution action stay shall be in effect against both parties and their agents and employees, without bond or further notice, until a final judgment is entered, the proceeding is dismissed, or until further order of the court:

   (1)     Restraining both parties from physically abusing, harassing, intimidating, striking, or interfering, with the personal liberty of the other party or the minor children of either party; and

   (2)     Restraining both parties from removing any minor child or either party from the State of Illinois or from concealing any such child from the other party without the consent of the other party or an order of the court.

### ANY PERSON WHO FAILS TO OBEY A DISSOLUTION ACTION STAY MAY BE SUBJECT TO PUNISHMENT FOR CONTEMPT.

* * * * * * *

* When a praecipe for summons filed without the petition, the petitioner has commenced suit for dissolution of marriage or legal separation and the respondent is required to file his or her appearance not later than 30 days from the day the summons is served and to plead to the petitioner's petition within 30 days from the day the petition is filed. {750 ILCS 5/411(b)}

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

304920_1.DOC