IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

SCHILLER DUCANTO AND FLECK, LLP:

              Plaintiff,          Case No. **08 C 518**

-vs-

SHARON S. HOBERMAN and GERALD LITWIN,

              Defendants.

**SHARON S. HOBERMAN'S MEMORANDUM
OF LAW IN OPPOSITION TO MOTION TO REMAND**

Plaintiff Schiller DuCanto & Fleck, LLP ("plaintiff" or "Schiller") does not dispute that there diversity of citizenship exists between it and its members on the one hand and defendants on the other. Plaintiff does not dispute that the amount in controversy exceeds $75,000 exclusive of interest and costs.

For purposes of this motion, Sharon Litwin, formerly known as Sharon Hoberman, accepts the facts asserted in Schiller's motion to remand, and she does not challenge the authenticity of any document attached to the memorandum of law filed in support of plaintiff's motion to remand. Schiller's fee petition does not ask this Court to adjudicate any aspect of the marital *res*. Therefore, although this action for fees arises in connection with a matrimonial action litigated in the Circuit Court of Cook County, Domestic Relations Division, it is not within the scope of the matrimonial exception to diversity jurisdiction.

*Ankenbrandt v. Richards*, 504 U.S. 689 (1992) construed the parameters of the exception. *Ankenbrandt* was an action for money damages brought by a woman on behalf of her two minor children against the children's father and his female companion. The mother sought money

damages for physical and sexual abuse of her children. The District Court dismissed the action, and the Court of Appeals affirmed. A unanimous Supreme Court reversed and remanded. After tracing the history of the exception, the Court stated:

> We conclude, therefore, that the domestic relations exception. . .divests the federal courts of power to issue divorce, alimony and child custody decrees. 504 U.S. at 703

Notwithstanding that statement, the Court sustained federal jurisdiction in the suit for monetary damages:

> By concluding, as we do that the domestic relations exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree, we necessarily find that the Court of Appeals erred by affirming the District Court's invocation of this exception. This lawsuit in no way seeks such a decree; rather, it alleges that respondents Richards and Kessler committed torts against L. R. and S. R., Ankenbrandt's children by Richards. Federal subject-matter jurisdiction pursuant to §1332 thus is proper in this case. 504 U.S. at 704

The Court devoted the balance of its opinion not to an analysis of the matrimonial exception but to whether abstention was appropriate, ultimately concluding that abstention was not warranted under any of several theories. Schiller does not argue that abstention is appropriate. In a footnote, the Supreme Court questioned how the defendants could have contended that the exception applied to the father's female companion who never had any marital relationship with the plaintiff, 504 U.S. at 704 n.7. Gerald Litwin stands in the same position as that companion.

No Seventh Circuit decision, prior to or subsequent to *Ankenbrandt*, provides wider parameters to the matrimonial exception. Even *Lloyd v. Loeffler*, 694 F.2d 489 (7th Cir. 1982), cited by Schiller at page 5 of its memorandum, does not construe the exception so broadly. *Lloyd*

was an action for damages for interference with custody brought by a father against the child's mother and her parents. The District Court awarded compensatory damages and punitive damages to the plaintiff; the Seventh Circuit affirmed. Speaking through Judge Posner, it explained why the matrimonial exception did not apply:

> The present suit, a tort suit that does not - not overtly anyway - seek one of the distinctive remedies provided by family courts, is not within the core of the domestic relations exception as we have described it. But there is also a periphery to be considered. When a case must begin in state court, as a divorce or custody case must, retention of any ancillary litigation in the same court is supported by considerations of judicial economy, and also by considerations of relative expertise since the issues in an ancillary proceeding may be the same as those in cases that are within the core of the domestic relations exception and hence within the exclusive jurisdiction of the state courts. 694 F.2d at 492.

The present action seeks damages against Sharon Litwin for breach of contract and against her father, Gerald Litwin, for liability under a guaranty. Neither body of law is within any special expertise of the family courts, nor is a judgment for damages a remedy distinctive to those courts.

The Seventh Circuit and Judge Posner revisited the matrimonial exception in *Friedlander v. Friedlander*, 149 F.3d 739 (1998), cited at page 3 of Schiller's brief. In *Friedlander*, a husband and wife were divorced in New York. The wife filed the New York judgment in Illinois state court as part of her attempt to collect alimony due under the New York decree. When the state court action was stayed pending arbitration, the ex-wife and her father sued the former husband in this Court for damages for intentional infliction of emotional distress. This Court dismissed the action, but the Seventh Circuit again reversed. Citing *Lloyd*, *Friedlander* stated that the exception had a core and a penumbra. The core consists of those issues which are only

adjudicable in family part, granting of a divorce or annulment, an award of custody and awards of alimony and child support. The penumbra consists of ancillary proceedings such as a suit to collect unpaid alimony.

*Lloyd* distinguished between core issues and ancillary proceedings. It allowed the tort suit to proceed despite its admitted tie to the state court divorce proceeding for there was no risk that a federal court judgment would be inconsistent with or interfere with the state court judgment. Schiller's fee application is no different. It is a routine suit by a law firm to collect for its services. However this Court decides the merits of the action, Sharon Litwin and Ethan Hoberman will remain divorced, there will be no change in custody or visitation with their daughter, and there will be no change in the issues of alimony or child support. There is zero risk that the judgment of this Court will affect any issue decided in the Cook County courts.

The Seventh Circuit has sustained federal jurisdiction two more times over the objection that the matrimonial exception required remand to state courts. In *Loubser v. Thacker*, 440 F.3d 439 (7th Cir. 2006), a dissatisfied matrimonial litigant filed a civil rights action in which she pleaded that many people had conspired to defraud her by corrupting her divorce action which culminated in a decree of divorce that, she claimed, deprived her of property in violation of due process. The Northern District of Indiana entered judgment on the pleadings for the defendants, and the Court of Appeals affirmed, in part, vacated in part and remanded. After questioning the likelihood that the plaintiff could prevail on the merits, Judge Posner addressed the jurisdiction of the federal courts:

> The grounds on which the district court dismissed Loubser's suit were erroneous. The claim that a defendant in a civil rights suit "so far succeeded in corrupting the state judicial process as to obtain a favorable

> judgment" is not barred by the *Rooker-Feldman* doctrine. *Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir.1995). Otherwise there would be no federal remedy other than an appeal to the U.S. Supreme Court, and that remedy would be ineffectual because the plaintiff could not present evidence showing that the judicial proceeding had been a farce, cf. *Moore v. Dempsey*, 261 U.S. 86, 91, 43 S.Ct. 265, 67 L.Ed. 543 (1923) (Holmes, J.); one cannot present evidence to an appellate court. This is in general rather than in every case, and maybe Indiana law would have enabled Loubser to present evidence in her appeal, but this issue has not been addressed. Moreover, the relief she seeks would go far beyond merely modifying the division of property decreed by the divorce court. She wants damages for the harassment to which the defendants allegedly subjected her en route to the judgment, including efforts to destroy her business as a physical therapist and drive her out of the country.
>
> This is not to say that Loubser had no possible state remedies, including bringing a post-judgment challenge to the decree as having been procured by fraud and complaining about judicial misconduct to the Indiana Judicial Nominating Commission, though the latter course would not have gotten her the monetary damages that she is seeking. But *Rooker-Feldman* does not impose a duty to exhaust judicial and administrative remedies before pursuing a federal civil rights suit. Except in prisoner suits, there is no requirement that a plaintiff in a suit under 42 U.S.C. § 1983 exhaust state remedies. E.g., *Wilkinson v. Dotson*, [544 U.S. 74] *supra*, 125 S.Ct. at 1246; *Patsy v. Board of Regents*, 457 U.S. 496, 501, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). And, as we pointed out, merely modifying the divorce decree would not give Loubser all the relief she seeks in this lawsuit.
>
> The domestic-relations exception to federal jurisdiction is not applicable to this case either. A federal court cannot grant or annul a divorce, but that is not what Loubser is seeking. 440 F.3d at 441-42

The probate exception to diversity jurisdiction is construed similarly to the matrimonial exception. The Supreme Court construed its parameters in *Marshall v. Marshall*, 547 U.S. 293 (2006). J. Howard Marshall married Vickie Marshall. Howard died without providing for Vickie in his will. Vickie claimed that Howard had intended to provide for her through a "catch-all" trust. The primary beneficiary of Howard's estate was his son, Pierce.

While Howard's estate was the subject of probate proceedings in the Texas courts, Vickie petitioned for bankruptcy in the Central District of California. Pierce filed a proof of claim in the bankruptcy court which alleged that Vickie had defamed Pierce when, shortly after Howard had died, Vickie's lawyers told the press that Pierce had engaged in forgery, fraud and over-reaching to gain control of his father's assets. Pierce sought a declaration that his claim was not dischargeable. Vickie answered and counterclaimed. She sought damages, claiming that Pierce had tortiously interfered with a gift she expected from Howard. Her counterclaim converted Pierce's claim into an adversary proceeding. The bankruptcy court granted summary judgment to Vickie on Pierce's claim against her. It conducted a trial and entered judgment in favor of Vickie on the counterclaim and awarded compensatory and punitive damages to her.

After the trial, Pierce moved to dismiss for lack of subject matter jurisdiction. He contended that Vickie's tortious interference counterclaim could be tried only in the Texas probate proceeding. The Bankruptcy Court denied the motion; it held that a federal court can adjudicate rights in probate property so long as the federal judgment does not interfere with the state court's possession of the property. On appeal, the District Court held that the probate exception did not bar Vickie's counterclaim. The Ninth Circuit reversed.

The Supreme Court reversed the Ninth Circuit. The Court began its analysis of the probate exception with a summary of *Ankenbrandt*, stating as a beginning point:

> We nevertheless emphasized in *Ankenbrandt* that the exception covers only "a narrow range of domestic relations issues." [504 U.S.], at 701, 112 S.Ct. 2206. The *Barber* [v. Barber. 21 How. 592. 16 L.Ed. 226 (1859)] Court itself, we reminded, "sanctioned the exercise of federal jurisdiction over the enforcement of an alimony decree that had been properly obtained in a state court of competent jurisdiction." 504 U.S., at 702, 112 S.Ct.

> 2206. Noting that some lower federal courts had applied the domestic relations exception "well beyond the circumscribed situations posed by *Barber* and its progeny," *id.,* at 701, 112 S.Ct. 2206, we clarified that only "divorce, alimony, and child custody decrees" remain outside federal jurisdictional bounds, *id.,* at 703, 704, 112 S.Ct. 2206. While recognizing the "special proficiency developed by state tribunals ... in handling issues that arise in the granting of [divorce, alimony, and child custody] decrees," *id.,* at 704, 112 S.Ct. 2206, we viewed federal courts as equally equipped to deal with complaints alleging the commission of torts, *ibid.* 547 U.S. at 307-08.
>
> * * *
>
> As the Court of Appeals correctly observed, Vickie's claim does not "involve the administration of an estate, the probate of a will, or any other purely probate matter." 392 F.3d, at 1133. Provoked by Pierce's claim in the bankruptcy proceedings, Vickie's claim, like Carol Ankenbrandt's, alleges a widely recognized tort. See *King v. Acker,* 725 S.W.2d 750, 754 (Tex.App.1987); Restatement (Second) of Torts § 774B (1979) ("One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that [s]he would otherwise have received is subject to liability to the other for loss of the inheritance or gift."). Vickie seeks an *in personam* judgment against Pierce, not the probate or annulment of a will. Cf. *Sutton* [v. English], 246 U.S. [199], at 208, 38 S.Ct. 254 [(1918)] (suit to annul a will found "supplemental to the proceedings for probate of the will" and therefore not cognizable in federal court). Nor does she seek to reach a *res* in the custody of a state court. See *Markham* [v. Allen], 326 U.S. [490], at 494, 66 S.Ct. 296 [(1946)].
>
> Furthermore, no "sound policy considerations" militate in favor of extending the probate exception to cover the case at hand. Cf. *Ankenbrandt,* 504 U.S., at 703, 112 S.Ct. 2206. Trial courts, both federal and state, often address conduct of the kind Vickie alleges. State probate courts possess no "special proficiency ... in handling [such] issues." Cf. *id.,* at 704, 112 S.Ct. 2206. 547 U.S. at 312

As Schiller's fee petition and supporting documents reflect, this action is nothing more than the proverbial garden variety suit to collect counsel fees claimed to be due and owing. It is not, like *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 590 (2d Cir. 1973), an

attempt by counsel for a divorcing woman to have her ex-husband pay her counsel fees. In such a case, there would be reason to defer to the family court. It could order the husband to pay a larger or smaller of the wife's counsel fees dependent on how it had distributed the parties' assets and how much alimony the wife was entitled to receive (or not receive). Schiller does not seek to have Ethan Hoberman pay any portion of its counsel fee. It looks to its own client and her father who, the Court can notice from Schiller's moving papers, was not a party to the state court proceeding.

Schiller cites 750 ILCS §508 to demonstrate that its fee petition is an inherent part of a divorce action. Although this statute authorizes fee applications, even against one's own client, to be filed in family court, the statute can neither divest this Court of jurisdiction nor convert a fee application into a core issue of the divorce action. *Marshall* rejected a similar argument. The Ninth Circuit had predicated its decision on a ruling of the Texas probate court that "it had exclusive jurisdiction over all of Vickie Lynn Marshall's claims against E. Pierce Marshall," 392 F.3d 1118, 1136 (9th Cir. 2004). The Supreme Court rejected this reasoning. No state court can defeat the existence of federal jurisdiction, 547 U.S. at 314, citing *Tennessee Coal, Iron & Railroad Co. v. George*, 233 U.S. 354, 360 (1914), *McClellan v. Carland*, 217 U.S. 268, 281 (1910) and *Waterman v. Canal-Louisiana Bank & Trust Co.*, 215 U.S. 33 (1909).

Notwithstanding *Marshall*, the probate exception and the matrimonial exception remain alive and well. *See also, Struck v. Cook County Public Guardian*, 508 F.3d 858 (7th Cir. 2007) in which this Court dismissed an action challenging the state court appointment of a guardian for the plaintiff's mother, and the Seventh Circuit affirmed. The appointment of a guardian was a core proceeding in the state court system. Schiller's suit for fees from its own client and her

8

father is not.

For the reasons stated in this memorandum, Sharon Litwin respectfully requests that this Court deny Schiller's motion to remand.

Respectfully submitted,

Robert A. Vort

Dated: March 13, 2008